Edgar J. Nathan, Jr., J.
Defendant A. C. Israel Commodity Co., Inc., moves to vacate a warrant of attachment in the aggregate sum of $600,471.40 heretofore issued against it. In the underlying action plaintiff sues movant and others for damages for fraud in a conspiracy to deprive plaintiff and the *230 United States of Brazil of American dollars by violating the foreign exchange regulations of Brazil with respect to certain transactions for the purchase and sale of coffee. Defendant Israel is a Delaware corporation having its principal place of business in New York City. Since the issuance of the warrant, this defendant has appeared generally.
The primary argument advanced in support of the motion is that plaintiff has failed to state a cause of action which the courts of this State would entertain in that it would require the enforcement of internal exchange laws and regulations of the United States of Brazil in derogation of the public policy of the United States and the State of New York.
It cannot be disputed that, as a general rule, laws furthering foreign governmental interests are not enforced in this jurisdiction (Cermak v. Bata, Akciova Spolecnost, 80 N. Y. S. 2d 782, affd. 275 App. Div. 919), even if they be laws of a sister State (State of Colorado v. Earbeck, 232 N. Y. 71), or countries with which the United States has traditionally had friendly and close relationships (Beadall v. Moore, 199 App. Div. 531).
However, recent decisions in this jurisdiction have beclouded this once clear rule since the United States enacted into law the “ Bretton Woods Agreement ” (Bretton Woods Agreement Act, 59 U. S. Stat. 512; U. S. Code, tit. 22, § 286 et seq.) effective December 27, 1945. Section 286k thereof provides:
‘ ‘ Further promotion of international economic relations.
‘1 In the realization that additional measures of international economic cooperation are necessary to facilitate the expansion and balanced growth of international trade and render most effective the operations of the Fund and the Bank, it is declared to be the policy of the United States to seek to bring about further agreement and cooperation among nations and international bodies, as soon as possible, on ways and means which will best reduce obstacles to and restrictions upon international trade, eliminate unfair trade practices, promote mutually advantageous commercial relations, and otherwise facilitate the expansion and balanced growth of international trade and promote the stability of international economic relations ’ ’.
In accordance with the foregoing, it has been held in this State that foreign exchange regulations are not against public policy if they are used as a defense to the enforcement of a contract which was entered into and was to be performed in a foreign county (Peruts v. Bohemian Discount Bank in Liquidation, 304 N. Y. 533). It has also been held that.the Bretton Woods Agreement prevents the courts of this State from enforcing illegal transactions in the field of international cur *231 reney exchange (see Southwestern Shipping Corp. v. National City Bank, 6 N Y 2d 454).
The question presented in the instant case is whether or not the Bretton Woods Agreement and the cases cited above justify this court in granting a warrant of attachment upon an action in which plaintiff seeks affirmative relief based on foreign currency regulations which were not heretofore enforeible in the courts of this State. So far as has been ascertained this is the first time this issue has been presented to a court of this State.
The only provision of the Bretton Woods International Monetary Agreement (60 U. S. Stat. 1411; U. S. Code, tit 22, § 286h) which refers to acts of private individuals is article VIII, section 2 (b) of the Articles of Agreement of the Bank, which reads: “ (b) Exchange contracts which involve the currency of any member and which are contrary to the exchange control regulations of that member maintained or imposed consistently with this Agreement shall be unenforceable in the territories of any member. In addition, members may, by mutual accord, cooperate in measures for the purpose of making the exchange control regulations of either member more effective, provided that such measures and regulations are consistent with this Agreement.”
It is clear from the language of section 2 (b) that before the provisions and purposes of the Bretton Woods Agreement can be affirmatively enforced in the courts of this country, it is necessary that additional accord be entered into between this country and other signatory nations. No such additional accord between the United States and Brazil has been indicated in the papers submitted. In the absence of such accords, it is the opinion of this court that the existence of a cause of action has not been shown as required by section 902 of the Civil Practice Act (Zenith Bathing Pavilion v. Fair Oaks S. S. Corp., 240 N. Y. 307).
Moreover, it appears on the face of the moving papers upon which the attachment was obtained that the computation of plaintiff’s alleged damages depends upon the internal currency regulations of Brazil which, as indicated above, are not enforeible in the instant action.
In view of the foregoing, it is unnecessary to consider the other objections to the warrant of attachment raised by this defendant, except to note in passing that defendant’s contention that plaintiff is not the real party in interest within the purview of section 210 of the Civil Practice Act is without merit. The motion to vacate the attachment is granted.